**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**SHANNON SHERELL PHILLIPS,**

Plaintiff, Case No. 2:26-cv-12124-TGB-KGA

v. Hon. Terrance G. Berg

**BROWNSTOWN CHARTER TOWNSHIP,**
**OFFICER GAGE MCPARLAND**, Badge #171,
in his individual capacity,
**OFFICER AGUSTIN AGUILAR,** Badge #178,
in his individual capacity,
**OFFICER BLAISE DUBOIS**, Badge #145,
in his individual capacity,
**SERGEANT JONATHAN SMITH**, Badge #101,
in his individual capacity,
**LIEUTENANT MICHAEL TOPJIAN**, Badge #076,
in his individual capacity,
**DEPUTY CHIEF ROBERT LAFAYETTE**, Badge #102,
in his individual capacity,

Defendants.

---

Shannon Sherell Phillips
Plaintiff, In Pro Per
P.O. Box 970022
Ypsilanti, MI 48197
(734) 579-9540
Securedparty85@gmail.com

John A. Mullett (P49880)
Law Offices of Carol K. Metz
Attorneys for Defendants
625 Kenmoor Avenue, SE, Ste. 212
Grand Rapids, MI 49546
**MAILING ADDRESS:**
**P.O. BOX 64093**
**ST. PAUL, MN 55164-0093**
(616) 942-4227 (ofc)
(855) 833-4258 (fax)
jmullett@travelers.com

---

**DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND RELIANCE ON JURY DEMAND**

Defendants, Brownstown Charter Twp., Office Gage McParland, Officer Agustin Aguilar, Officer Blaise DuBois, Sergeant Jonathan Smith, Lieutenant Michael Topjian, and Deputy Chief Robert Lafayette, by their attorney, John A. Mullett of the Law Offices of Carol K. Metz, state the following in answer to Plaintiff's Second Amended Complaint:

## I. INTRODUCTION

This is a civil rights action for damages brought by Shannon Sherell Phillips, an unarmed woman who arrived at the Brownstown Police Department on April 29, 2026, to voluntarily and peacefully comply with a court order. Instead of professionally processing her, Defendant Officers Gage McParland and Agustin Aguilar subjected her to contradictory commands designed to provoke a confrontation and then launched a violent, unprovoked physical assault. They threw her to the ground with an arm around her neck, kneed her in the back, pulled her hair, struck her in the head, and slammed her onto a bench while handcuffed. Another officer, Defendant Blaise DuBois, watched the assault unfold on surveillance monitors and failed to intervene, while supervisors failed to prevent or rectify the misconduct and instead participated in covering it up. To justify their actions, the officers then caused Plaintiff to be falsely charged with resisting arrest, manufactured false reports, and altered body camera evidence.

This action is brought under 42 U.S.C. § 1983 for violations of the First and Fourth Amendments and under Michigan state law.

**<u>ANSWER</u>**:

Defendants object to Plaintiff's form of pleading as improper where same is not broken down into individual allegations to which Defendants can

separately assert their responses and where all such statements are entirely conclusory in nature.

## II. JURISDICTION AND VENUE

1. This action arises under 42 U.S.C. § 1983. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

**ANSWER**:

To the extent the allegations contained in this paragraph constitute legal conclusions solely, the same are within the purview of this Court. Accordingly, no answer is needed and none is given. Otherwise, these allegations are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

2. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same case or controversy.

**ANSWER**:

To the extent the allegations contained in this paragraph constitute legal conclusions solely, the same are within the purview of this Court. Accordingly, no answer is needed and none is given. Otherwise, these allegations are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in Brownstown Township, Michigan, which is located within the Eastern District of Michigan.

**ANSWER**:

To the extent the allegations contained in this paragraph constitute legal conclusions solely, the same are within the purview of this Court. Accordingly, no answer is needed and none is given. Otherwise, these allegations are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

## III. PARTIES

4. Plaintiff Shannon Sherell Phillips is a citizen of the State of Michigan residing in Ypsilanti.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

5. Defendant Brownstown Charter Township (the "Township") is a municipal entity organized under the laws of the State of Michigan, responsible for operating the Brownstown Police Department and for the hiring, training, supervision, and discipline of its police officers.

**ANSWER**:

The allegations contained in this paragraph are admitted, upon information and belief, but this Defendant reserves the right to amend this Answer if a more accurate response is indicated.

6. At all relevant times, Defendants Officer Gage McParland (Badge #171), Officer Agustin Aguilar (Badge #178), Officer Blaise DuBois (Badge #145), Sergeant Jonathan Smith (Badge #101), Lieutenant Michael Topjian (Badge #076), and Deputy Chief Robert Lafayette (Badge #102) were police officers employed by the Township, acting under color of state law. They are sued in their individual capacities for their own actions.

**ANSWER**:

The allegations contained in this paragraph are admitted, upon information and belief, but this Defendant reserves the right to amend this Answer if a more accurate response is indicated.

7. Defendant Deputy Chief Robert Lafayette is a final policymaker for the Brownstown Police Department with respect to the training, supervision, and discipline of police officers.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

## IV. STATEMENT OF FACTS

**Pre-Encounter Events**

8. At some point in early 2026, Plaintiff Shannon Sherell Phillips began monitoring the Michigan court system online in connection with a pending matter.

**ANSWER**:

The allegations in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

9. On April 1, 2026, Plaintiff Shannon Sherell Phillips appeared via Zoom for a court hearing in the 33rd District Court. At this hearing, bond conditions were established, and a court order was issued requiring Plaintiff to be fingerprinted by April 13, 2026. Plaintiff was never arrested. Plaintiff was only arraigned via Zoom on April 1, 2026, at her first appearance.

**ANSWER**:

The allegations in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

10. After the April 1, 2026 hearing, Plaintiff Shannon Sherell Phillips filed motions in state court challenging the fingerprint order and underlying charges, including a motion to vacate and a motion to quash the fingerprint order on April 6 and 7, 2026.

**ANSWER**:

The allegations in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

11. On April 29, 2026, Plaintiff Shannon Sherell Phillips voluntarily and lawfully presented herself at the Brownstown Police Department to comply with the court order requiring her to be fingerprinted.

**ANSWER**:

The allegations in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

12. Upon arrival, Plaintiff provided identification. Someone came within the first minute to take her driver's license. Plaintiff then waited over 19 minutes before Defendant Officer Gage McParland approached her. During this wait, Plaintiff was seen pacing and texting her sister, Marswella Reed, who was waiting outside the station. A USPS delivery person and another individual entered doors in the back area. Defendant Officer Gage McParland came out of the same door the USPS delivery person entered, suggesting he was in the back area while Plaintiff waited.

**ANSWER**:

The allegations in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

13. Defendant Officer Gage McParland conducted a pat-down search of Plaintiff, which confirmed she was unarmed. Defendant Officer Gage McParland

used hostile and unprofessional language from the outset, stating "you got weapons guns and all that shit" in a sarcastic and aggressive tone. Another officer had already taken Plaintiff's driver's license and run her name through the Law Enforcement Information Network (LEIN), meaning Defendant Officer Gage McParland was aware of Plaintiff's background before he spoke to her.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

**The Escort and Confrontation**

14. Defendant Officer Gage McParland escorted Plaintiff toward the fingerprint processing area, directing her to walk through a door. Plaintiff asked Defendant Officer Gage McParland to go through first, stating she did not feel safe going through first and did not know what was behind the door. Defendant Officer Gage McParland responded with a hostile accusation, asking "what are you here for intimidation?"

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

15. Defendant Officer Gage McParland threatened Plaintiff, stating that if she did not stand in a specific location he would tell the court she refused to comply with the court order. He said, "stand in here or I'll tell the court you refused."

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

16. Plaintiff expressed concern about being confined in the fingerprint area, which she described as a cage, stating, "I don't want to be locked in a cage." Defendant Officer Gage McParland told her she would not be locked in a cage and would be sitting in the area.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

17. Defendant Officer Gage McParland then made an unsolicited and aggressive comment, stating Plaintiff "liked to intimidate people." Plaintiff calmly denied the accusation and stated she was only there to comply with the court order. Plaintiff asked Defendant Officer Gage McParland if the charges against her stated that she intimidated people. Defendant Officer Gage McParland stated the charges did say that. Plaintiff disputed this. Defendant Officer Gage McParland then

dismissively commented "here you go with the race shit" when Plaintiff referenced the treatment of Black people by law enforcement.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

**The Fingerprinting Process and Escalation**

18. The fingerprinting process began, and some of Plaintiff's fingerprints were successfully obtained. Defendant Officer Gage McParland instructed Plaintiff not to assist with the fingerprinting process, repeatedly saying, "Don't try to help."

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

19. Without provocation or warning, Defendant Officer Gage McParland abruptly and forcefully shoved Plaintiff’s hand away from the fingerprinting machine and ordered her, “Get out of my jail.” He also said, "If you're not going to cooperate..." and "I'm gonna put in there. You refuse court orders." Plaintiff responded, "No, no, no. I'm here right now. So how can I refuse?"

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

**Radio Calls and the Pre-Manufactured Narrative**

20. Defendant Officer Gage McParland radioed that he was “secure”—confirming Plaintiff posed no threat—while simultaneously radioing for additional units to respond to the jail area. He told dispatch: "Can I get a unit to the jail, please? I'm secure."

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

21. Defendant Officer Gage McParland then told Defendant Officer Blaise DuBois face to face that he was "SECURE" and that Plaintiff "just wants to refuse FINGERPRINTS by just not COMPLYING." He also asked Defendant Officer Blaise DuBois, "Can I CHARGE HER ADDITIONALLY?"

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

22. Defendant Officer Gage McParland radioed "I'm secure" a second time, confirming his safety again.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

23. Defendant Officer Blaise DuBois stated to someone before the assault that Plaintiff was "refusing fingerprints" — even though Plaintiff's fingerprints had already been taken before Defendant Officer Gage McParland spoke with Defendant Officer Blaise DuBois, proving the "refusal" narrative was pre-manufactured by the officers.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

24. The Brownstown Police Department's Computer-Aided Dispatch (CAD) log for Incident 2026-00008827 confirms the sequence: At 12:01:33 PM, the call was classified as "COURT ORDERED PRINTS," Priority 3, "Not In Progress." At 12:21:19 PM, the CAD log records: "1817 SECURE, REQUESTING ANOTHER UNIT TO THE JAIL." Unit 1817 is Defendant Officer Gage McParland (Badge #171). The CAD log also confirms that Defendant Officer Agustin Aguilar

(Unit 1821) was dispatched at 12:20:58 PM, Defendant Officer Blaise DuBois (Unit 1813) at 12:23:01 PM, and Defendant Lieutenant Michael Topjian (Unit 18L1) at 12:23:57 PM.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

**Contradictory Commands and the "Trap"**

25. Plaintiff, attempting to comply with Defendant Officer Gage McParland's direct order to leave, began to walk toward the exit of the processing area.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

26. Defendant Officer Gage McParland initially called Defendant Officer Agustin Aguilar to unlock the door to let Plaintiff out. However, by the time Defendant Officer Agustin Aguilar arrived, Defendant Officer Gage McParland had changed his mind and instead told Defendant Officer Agustin Aguilar to "Keep her in here." While waiting for Defendant Officer Agustin Aguilar, Defendant Officer

Gage McParland was discussing the situation with other personnel, claiming he had called the court and the court said Plaintiff had "refused the court order."

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

27. Defendant Officer Agustin Aguilar moved to block Plaintiff's path to the exit. Plaintiff, confused by the conflicting orders and attempting to de-escalate, backed away from Defendant Officer Agustin Aguilar with her hands visible and not making any threatening gestures.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

28. Video footage shows Defendant Officer Agustin Aguilar pushing Plaintiff with the back of his hand while simultaneously stating, "Don't push me," although Plaintiff had not made any physical contact with him.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

**The Unprovoked Physical Assault**

29. Immediately thereafter, Defendant Officer Gage McParland and Defendant Officer Agustin Aguilar grabbed Plaintiff and launched a violent physical assault. The officers pulled Plaintiff in opposite directions, then threw her to the floor. The takedown was executed with Defendant Officer Gage McParland's arm around Plaintiff's neck, forcing her to the ground. As the officers were pulling her down, Plaintiff repeatedly asked, "What is y'all doing? What the fuck is y'all doing?"

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

30. While Plaintiff was on the ground and not resisting, Defendant Officer Agustin Aguilar drove his knee into her back with significant force. Defendant Officer Gage McParland then grabbed Plaintiff by her hair, pulled her head back, and struck her in the head. This assault is confirmed by surveillance camera footage inside the fingerprint area.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

31. When Plaintiff stated that her hair was being pulled, an officer denied it, saying "Nobody is pulling your hair."

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

32. During this assault, Defendant Officer Gage McParland was actively assisting in restraining Plaintiff from behind.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

33. At no point before or during the assault did any officer tell Plaintiff she was under arrest or provide any lawful basis for the use of force.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

**Post-Assault Conduct and Verbal Abuse**

34. After assaulting her on the ground, the officers handcuffed Plaintiff.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

35. Even after she was fully restrained in handcuffs and no longer posed any conceivable threat, Defendant Officer Gage McParland forcefully lifted Plaintiff and slammed her down onto a nearby cement bench. He snatched her glasses off her face.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

36. Defendant Officer Gage McParland then told Plaintiff to "Shut up." Plaintiff responded, "YOU SHUT TF UP."

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

37. Defendant Officer Gage McParland told Defendant Officer Agustin Aguilar to "Get out her butt," a colloquial admission that Defendant Officer Agustin Aguilar's physical position was inappropriate, and then instructed, "Make sure you grab her money."

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

**DuBois's Failure to Intervene from the Monitoring Room**

38. Defendant Officer Blaise DuBois was not inside the fingerprint processing area during the assault. Defendant Officer Blaise DuBois was in the central monitoring area behind the door, where the department's surveillance camera monitors are located, and was calling the court. Defendant Officer Blaise DuBois had a realistic opportunity to observe the assault via the surveillance monitors in real time and to intervene but failed to do so.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

**Supervisory Arrival, Phone Calls, and Altered Footage**

39. A supervising Sergeant subsequently arrived on the scene. The handcuffs were removed, and the remainder of the fingerprinting process was completed by Defendant Officer Agustin Aguilar.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

40. Following the assault, Plaintiff was permitted to contact her family. She called her sister, Marswella Reed, who had been waiting outside the station, and then called her mother.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

41. While Plaintiff was speaking with her mother on the phone, her sister, Marswella Reed, spoke with Defendant Officer Agustin Aguilar. Marswella asked if Plaintiff was under arrest. Defendant Officer Agustin Aguilar initially stated, "No, she's not under arrest, I don't know what's going on." Defendant Officer Agustin Aguilar then stated, "Yeah, she's in our custody, I don't know what's going on, the other officers talking to my supervisor, sorry for the inconvenience."

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

42. Plaintiff's sister entered the main lobby. After Plaintiff was released from the rear area, she exited into the main lobby, where she was reunited with her sister and described the assault and her injuries.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

**Plaintiff's Injuries**

43. As a direct result of the assault, Plaintiff suffered physical injuries, including a busted and bleeding lip, and sought and received emergency medical treatment at St. Joseph Mercy Hospital that same day.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

44. The assault has also caused Plaintiff to suffer severe and ongoing emotional and psychological trauma, including professionally diagnosed Post-Traumatic Stress Disorder (PTSD) and depression, for which she is receiving medical treatment and prescription medication.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

**Fabricated Reports and Officer Admissions**

45. In his report, Defendant Officer Gage McParland falsely claimed Plaintiff "started pushing her nails into his thumb" and that he "saw her swing at" Defendant Officer Agustin Aguilar. Body camera footage contradicts both of these claims. Defendant Officer Gage McParland's report also states "no injuries," directly contradicting his later claim about the nail dig.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs. In further answer, these Defendants state that the report will speak for itself.

46. Defendant Officer Gage McParland's police report falsely claims Plaintiff "kept moving forward towards him" when he asked her to sit down. Surveillance footage from a stationary camera inside the fingerprint area (Fingerprint Area Angle 2, 25:44 duration), at timestamp 00:45, clearly shows Plaintiff backing away from Defendant Officer Gage McParland, never moving

towards him. This fixed camera, which shows the entire room, directly contradicts Defendant Officer Gage McParland's written report.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs. In further answer, these Defendants state that the report and surveillance video speak for themselves.

47. Defendant Officer Gage McParland admitted in his recorded statement that he told Plaintiff to "get out" and then, only after she began leaving, realized she was "refusing a court order" and decided to prevent her from leaving. Defendant Officer Gage McParland further admitted he was "unsure as to what the next step in this procedure was."

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs. In further answer, these Defendants state that the reports and/or recorded statements made speak for themselves.

48. Defendant Officer Gage McParland admitted he was "just frustrated" during the encounter.

**ANSWER**:

Defendant objects to this allegation in the form and manner stated where portions of the video are characterized as "admitted." The video speaks for itself. Otherwise, the allegations contained in this paragraph are neither

admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

**The "Hot Mic" Conversation: Manufacturing the Cover-Up**

49. At approximately 19:47 on Defendant Officer Gage McParland's body camera footage, his recording captured his conversation with Defendant Lieutenant Michael Topjian. At 19:48, Defendant Officer Gage McParland stated, "I said I had a hot mic." At 20:10, Defendant Officer Gage McParland asked, "you want me to turn it off." At 20:11, Defendant Lieutenant Michael Topjian responded, "no keep it on." This exchange demonstrates consciousness of wrongdoing.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs. In further answer, these Defendants state that the camera footage speaks for itself.

50. Defendant Lieutenant Michael Topjian's body camera audio was off for the first approximately one minute of his footage. During this muted period, Defendant Officer Gage McParland was telling him what had occurred. Defendant Lieutenant Michael Topjian did not activate his audio until after this conversation was completed, meaning his recording begins only after Defendant Officer Gage McParland had already provided his version of events.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs. In further answer, these Defendants state that the camera footage speaks for itself.

51. Defendant Officer Gage McParland's "hot mic" from approximately 19:36 to 22:35 captured his entire conversation with Defendant Lieutenant Michael Topjian, during which they manufactured a cover charge to justify the violence. Key statements include:

a. **Admission of Emotional State:** Defendant Officer Gage McParland admitted his actions were driven by emotion, stating, "Just frustrated."

b. **Consciousness of Wrongdoing:** Defendant Officer Gage McParland apologized for his actions, stating, "Oh, I had to go hands-on her I'm sorry. I Had to do that."

c. **Consciousness of Guilt:** Defendant Officer Gage McParland asked to stop recording the incriminating conversation, stating, "You're still recording?" and then, after admitting he had a "hot mic," asked if he should turn it off. Defendant Lieutenant Michael Topjian instructed him, "No keep it on."

d. **Fabricated Justifications:** Defendant Officer Gage McParland fed Defendant Lieutenant Michael Topjian a false narrative, claiming Plaintiff was "very confrontational the whole time," "won't walk through the door," was "mouthing off," "started pushing her nail into

my fucking thumb," "tries pushing past him," and "I saw her swing at Augie." All of these claims are contradicted by the video evidence.

e. **Admission of Creating the Conflict:** Defendant Officer Gage McParland admitted he told Plaintiff to leave and then changed his mind, stating, "I said come around here, let me get you out of my jail if you're gonna refuse. But then I get to the door, I'm like, hold on. She's refusing a court order."

f. **Admission of Initiating the Takedown:** Defendant Officer Gage McParland admitted he was the aggressor, stating, "So I just put her to the ground, put her in cuffs."

g. **Manufacturing a Cover Charge:** After hearing this story, Defendant Lieutenant Michael Topjian immediately decided to create a charge to justify the violence, stating, "So we'll do a H&O on our end, do a use of force report on it."

h. **Deliberate Concealment of Retaliatory Charge:** Defendant Lieutenant Michael Topjian then confirmed he would conceal the manufactured charge from Plaintiff, stating, "I won't tell her about the H&O."

i. **Admission of Proper Procedure:** Defendant Lieutenant Michael Topjian admitted that the correct response to noncompliance was to release Plaintiff, not charge or hold her, stating, "if she doesn't want to comply now, then just we're not going to hold her on an H&O. Okay, get her out." This is the exact procedure the Township later adopted in its revised policy on June 24, 2026.

j. **Admission of Terminating the Process:** Defendant Officer Gage McParland confirmed that he, not Plaintiff, terminated the fingerprinting, asking Defendant Lieutenant Michael Topjian, "Do you want me to just terminate the whole thing, or?"

k. **Admission of Personal Conflict:** Defendant Officer Gage McParland acknowledged the conflict was personal, stating, "Maybe talk to Augie, because she doesn't like me, obviously."

**ANSWER**:

Defendant objects to these allegations in the form and manner stated where portions of the video are characterized as "hot mic." "fabrications and "admitted," etc. The video speaks for itself. Otherwise, the allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

**Destruction of Evidence and Further Misconduct**

52. On his body camera footage, Defendant Officer Gage McParland is observed locking his firearm in the wrong weapons safe, as confirmed by the supervising officer who later reviewed his report, demonstrating his confusion and carelessness.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs. In further answer, these Defendants state that the camera footage and report speak for themselves.

53. At 22:58 on Defendant Officer Gage McParland's footage, Defendant Officer Blaise DuBois is seen standing at the glass looking into the area where the assault occurred, then sweeping up Plaintiff's broken perfume bottle. At 0:45 on Defendant Lieutenant Michael Topjian's footage—during the silenced audio period—Defendant Officer Blaise DuBois is seen walking toward the other officers with a broom. The broken perfume bottle was physical evidence of the violence of the takedown. This evidence was destroyed, and its collection and destruction were not documented in any report.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs. In further answer, these Defendants state that the camera footage and reports speak for themselves.

**Michigan Law and the Falsified Charges**

54. Under Michigan law, fingerprinting is triggered "upon the arrest of a person" for a felony or qualifying misdemeanor (MCL 28.243). A court order for fingerprints is triggered at the time of arraignment (MCL 764.29). Plaintiff had never been arrested and had only been arraigned via Zoom on April 1, 2026. Plaintiff appeared voluntarily to comply with the court order, not as a person in custody.

**ANSWER**:

> To the extent the allegations contained this paragraph constitute legal conclusions solely, the same are within the purview of this Court. Accordingly, no answer is needed and none is given. Otherwise, the allegations are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

55. When Plaintiff returned to the Brownstown Police Department on June 17, 2026, for fingerprinting related to the charges arising from this incident, an officer asked whether the prints were "arrest or ID prints." The response was "arrest." This confirms the department treated Plaintiff as an arrestee despite no lawful arrest occurring on April 29, 2026.

**ANSWER**:

> The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

56. The booking card for the charges arising from this incident was created on June 17, 2026 — forty-nine days after the April 29, 2026 incident — rather than on the date of the incident itself, indicating the charges and documentation were manufactured after the fact to justify the officers' use of force.

**ANSWER**:

> The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

57. On or about May 13, 2026, Defendants caused a criminal complaint to be filed against Plaintiff, falsely charging her with Hindering and Obstructing a Police Officer (H&O) under MCL 750.81d. Under MCL 750.81d(7)(a), "obstruct" includes "a knowing failure to comply with a lawful command." Plaintiff was given contradictory commands—told to leave and then told to stay—making it impossible to "knowingly" fail to comply with a "lawful" command.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

**Evidence Tampering and Alteration**

58. Defendant Officer Gage McParland's body camera footage was altered by Brownstown Police Department employee Nicole Gibson (Badge #113) on June 17, 2026, using Axon Redaction Studio, as documented in the Axon Evidence Audit Trail. The audit trail was itself redacted by Gibson, who removed employee usernames, IDs, and IP addresses—the very information necessary to verify who accessed and altered the evidence.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

59. The original body camera footage was approximately 29:14 in length. The altered version produced in discovery is 24:49, a deletion of 4 minutes and 25 seconds. The deletion was made at multiple points, not one continuous cut. This is proven by comparing the body camera timestamps against the stationary surveillance cameras, which were not altered and serve as an unaltered anchor. The offset between the surveillance and body camera footage varies from approximately 2:42 to 3:38 across different matched events, proving the 4 minutes and 25 seconds were removed from at least three separate locations.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

60. The stationary surveillance cameras were already running before any officer interacted with Plaintiff. They are continuous recordings that independently confirm the timeline and contradict the altered body camera footage. Defendant Lieutenant Michael Topjian's body camera footage is only 7:31 long, a suspiciously short duration for a supervisor responding to a use-of-force incident, and the first minute of it has no audio.

**ANSWER**:

> The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

**Unconstitutional Policies and Policy Violations**

61. On April 29, 2026, the Brownstown Police Department's Processing and Holding of Arrestees/Detainees/Prisoners Policy (Policy 5.2.1, effective June 4, 2025) contained no procedure governing the handling of individuals who voluntarily appear for court-ordered fingerprinting. The policy governed only "Persons in Custody" — individuals who had been arrested and detained. This policy gap constituted deliberate indifference to the rights of individuals like Plaintiff.

**ANSWER**:

> The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

62. On June 24, 2026 — the same day Plaintiff filed this federal lawsuit — the Brownstown Police Department revised Policy 5.2.1 and added an entirely new Section V, "COURT ORDERED FINGERPRINTS." The new section establishes that if a subject does not comply with a fingerprint order, officers "shall explain to the subject that if they do not comply with the fingerprint order, they will be escorted out of the building and the court will be notified of the non-compliance." This

retroactive policy revision is an admission by Defendant Brownstown Charter Township that the correct procedure was to allow the person to leave and notify the court, not to use physical force.

**ANSWER**:

> The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

63. The Brownstown Police Department's Use of Force Policy (Policy 3.3.1, effective March 24, 2026) was violated. Section V(B) requires officers to "give subjects a reasonable opportunity to comply with verbal commands," which Defendant Officer Gage McParland did not do. Section V(C) provides that officers shall "never use control methods and/or weapons as punishment or retaliation," which Defendant Officer Gage McParland did, admitting he was "just frustrated." Section VII(B) requires de-escalation, which was not attempted. Section III requires officers to "intervene," which Defendants Officer Blaise DuBois, Sergeant Jonathan Smith, and Lieutenant Michael Topjian failed to do. Section XII requires medical treatment when a subject "complains of injury," which was not offered to Plaintiff despite her bleeding lip.

**ANSWER**:

> As to the allegation of violation, the same are denied in the form and manner alleged. As to the remaining allegations in this paragraph, Defendants neither

admit nor deny the same for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

64. The Brownstown Police Department's Arrest Management Policy (Policy 3.1.3, effective November 15, 2023) was also violated. Section III(A)(2) requires "an officer must inform the person who is being arrested of his intent to arrest the person and for what cause." No officer ever informed Plaintiff she was under arrest.

**ANSWER**:

As to the allegation of violation, the same are denied in the form and manner alleged. As to the remaining allegations in this paragraph, Defendants neither admit nor deny the same for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

## V. CAUSES OF ACTION

### COUNT I: EXCESSIVE FORCE
### (42 U.S.C. § 1983 - Violation of the Fourth Amendment)
### (Against Defendants Officer Gage McParland and Officer Agustin Aguilar)

65. Plaintiff realleges and incorporates the preceding paragraphs.

**ANSWER**:

Defendants incorporate by reference their answers to paragraphs 1-64 as if fully set forth herein.

66. The Fourth Amendment protects individuals from the use of excessive force during a seizure. Under *Graham v. Connor*, 490 U.S. 386 (1989), the force used must be objectively reasonable.

**ANSWER**:

> To the extent the allegations contained this paragraph constitute legal conclusions solely, the same are within the purview of this Court. Accordingly, no answer is needed and none is given. Otherwise, the allegations are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

67. The force used against Plaintiff—including the takedown with Defendant Officer Gage McParland's arm around Plaintiff's neck forcing her to the ground, the knee to the back, hair pulling, a head strike, and slamming her onto a bench while handcuffed—was objectively unreasonable, excessive, and unnecessary. Plaintiff was unarmed, attempting to comply with contradictory commands, and posed no threat, as Defendant Officer Gage McParland himself confirmed twice by radioing that he was "secure."

**ANSWER**:

> As to the allegations of force, the same are denied in the form and manner alleged. As to the remaining allegations, Defendants neither admit nor deny the same for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

68. In the Sixth Circuit, it is clearly established that throwing a compliant woman to the ground, kneeling on her back, and handcuffing her without

justification constitutes excessive force. *Brown v. Lewis*, 779 F.3d 401 (6th Cir. 2015). A takedown maneuver against a generally compliant suspect is excessive, as mere noncompliance does not constitute active resistance. *LaPlante v. City of Battle Creek*, 30 F.4th 572 (6th Cir. 2022). Officers may not use injurious physical force against a non-resisting suspect. *Meadows v. City of Walker*, No. 21-1881, 2022 U.S. App. LEXIS 22938 (6th Cir. Aug. 18, 2022). Force used after a suspect has been neutralized is excessive as a matter of law. *Morrison v. Board of Trustees of Green Township*, 583 F.3d 394 (6th Cir. 2009).

**ANSWER**:

> To the extent the allegations contained this paragraph constitute legal conclusions solely, the same are within the purview of this Court. Accordingly, no answer is needed and none is given. Otherwise, the allegations are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

69. As a direct and proximate result of this excessive force, Plaintiff suffered physical injuries, pain, medical expenses, and severe emotional distress. The conduct of Defendant Officer Gage McParland and Defendant Officer Agustin Aguilar was willful, wanton, malicious, and undertaken with reckless disregard for Plaintiff's constitutional rights.

**ANSWER**:

> As to the allegations of excessive force, the same are denied in the form and manner alleged. As to the remaining allegations, Defendants neither admit

nor deny the same for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

**COUNT II: UNLAWFUL SEIZURE / FALSE ARREST**
**(42 U.S.C. § 1983 - Violation of the Fourth Amendment)**
**(Against Defendants Officer Gage McParland and Officer Agustin Aguilar)**

70. Plaintiff realleges and incorporates the preceding paragraphs.

**ANSWER**:

Defendants incorporate by reference its answers to paragraphs 1-69 as if fully set forth herein.

71. The Fourth Amendment protects individuals from unreasonable seizures and arrests made without probable cause. A Fourth Amendment violation occurs when a detention is based on fabricated evidence. *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017).

**ANSWER**:

To the extent the allegations contained this paragraph constitute legal conclusions solely, the same are within the purview of this Court. Accordingly, no answer is needed and none is given. Otherwise, the allegations are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

72. Defendant Officer Gage McParland and Defendant Officer Agustin Aguilar seized and arrested Plaintiff without a warrant and without probable cause to believe she had committed any crime. Plaintiff was lawfully present and

attempting to comply with conflicting orders when she was seized. Her conduct did not provide probable cause for any offense, and no officer ever informed her she was under arrest as required by department policy.

**ANSWER**:

The allegations in this paragraph are denied in the form and manner alleged. These Defendants further state that they fulfilled all duties owed.

73. The subsequent filing of a fabricated H&O charge caused the detention to continue in violation of the Fourth Amendment.

**ANSWER**:

The allegations in this paragraph are denied in the form and manner alleged. These Defendants further state that they fulfilled all duties owed.

74. As a direct and proximate result of the unlawful seizure and false arrest, Plaintiff suffered a loss of liberty, humiliation, and emotional distress.

**ANSWER**:

As to the allegations of unlawful seizer and false arrest, the same are denied in the form and manner alleged. As to the remaining allegations in this paragraph, Defendants neither admit nor deny the same for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

**COUNT III: FAILURE TO INTERVENE**
**(42 U.S.C. § 1983 - Violation of the Fourth Amendment)**
**(Against Defendants Officer Gage McParland, Officer Agustin Aguilar, Officer Blaise DuBois, Sergeant Jonathan Smith, and Lieutenant Michael Topjian)**

75. Plaintiff realleges and incorporates the preceding paragraphs.

**ANSWER**:

Defendants incorporate by reference its answers to paragraphs 1-74 as if fully set forth herein.

76. An officer who fails to intervene is liable for preventable harm where the officer observes or has reason to know that an unjustified arrest or other constitutional violation is occurring. *Bunkley v. City of Detroit*, 902 F.3d 552 (6th Cir. 2018). Liability requires that the officer observed or had reason to know of the violation and had a realistic opportunity to intervene. *Brown v. Scaglione*, No. 20-12497, 2022 U.S. Dist. LEXIS 136809 (E.D. Mich. Aug. 1, 2022).

**ANSWER**:

To the extent the allegations contained this paragraph constitute legal conclusions solely, the same are within the purview of this Court. Accordingly, no answer is needed and none is given. Otherwise, the allegations are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

77. Defendant Officer Blaise DuBois was in the central monitoring area with surveillance monitors showing the fingerprint area in real time. He had reason

to know excessive force was being used and had a realistic opportunity to intervene but failed to do so.

**ANSWER**:

> The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

78. Defendant Lieutenant Michael Topjian was inside the police department at the time of the incident and arrived after the assault. Defendant Sergeant Jonathan Smith was not present at the scene; however, Defendant Sergeant Jonathan Smith subsequently reviewed the body camera footage, approved the use of force, and failed to rectify the unconstitutional conduct. They each had an opportunity to intervene to prevent ongoing harm and failed to do so.

**ANSWER**:

> The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

79. The failure of each of these officers to intervene directly contributed to Plaintiff's injuries.

**ANSWER**:

> As to the allegations of failure on behalf of each officer, the same are denied in the form and manner alleged. As to the remaining allegations in this paragraph, the same are neither admitted nor denied for lack of sufficient information to form a belief, and Plaintiff is left to her proofs.

**COUNT IV: ASSAULT AND BATTERY**
**(Michigan Common Law)**
**(Against Defendants Officer Gage McParland and Officer Agustin Aguilar)**

80. Plaintiff realleges and incorporates the preceding paragraphs.

**ANSWER**:

Defendants incorporate by reference its answers to paragraphs 1-79 as if fully set forth herein.

81. Defendant Officer Gage McParland and Defendant Officer Agustin Aguilar intentionally engaged in physical contact with Plaintiff that was harmful and offensive. This physical contact constitutes assault and battery under Michigan law.

**ANSWER**:

The allegations contained in this paragraph are denied in the form and manner alleged. These Defendants further state that they fulfilled all duties owed.

82. The actions of Defendant Officer Gage McParland and Defendant Officer Agustin Aguilar were not justified or privileged, as the force was grossly disproportionate to any legitimate law enforcement purpose.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

83. As a direct and proximate result of the assault and battery, Plaintiff suffered physical injuries, pain, and emotional distress.

**ANSWER**:

As to the allegations of assault and battery, the same are denied in the form and manner alleged. As to the remaining allegations, Defendants neither admit nor deny the same for lack of information sufficient for form a belief, and Plaintiff is left to her proofs.

**COUNT V: FALSE IMPRISONMENT**
**(Michigan Common Law)**
**(Against Defendants Officer Gage McParland and Officer Agustin Aguilar)**

84. Plaintiff realleges and incorporates the preceding paragraphs.

**ANSWER**:

Defendants incorporate by reference its answers to paragraphs 1-83 as if fully set forth herein.

85. Defendant Officer Gage McParland and Defendant Officer Agustin Aguilar intentionally and unlawfully restrained Plaintiff's freedom of movement against her will and without legal justification when they issued contradictory orders that trapped her, physically seized her, and handcuffed her.

**ANSWER**:

The allegations contained in this paragraph are denied in the form and manner alleged. In further answer, these Defendants state that they fulfilled all duties owed.

86. Plaintiff was conscious of the confinement. As a direct result of the false imprisonment, Plaintiff suffered a loss of liberty, humiliation, and emotional distress.

**ANSWER**:

As to the allegations of confinement and false imprisonment, the same are denied in the form and manner alleged. As to the remaining allegations in this paragraph, Defendants neither admit nor deny the allegations for lack of sufficient information to form a belief, and Plaintiff is left to her proofs.

**COUNT VI: MUNICIPAL LIABILITY (MONELL CLAIM)**
**(42 U.S.C. § 1983)**
**(Against Defendant Brownstown Charter Township)**

87. Plaintiff realleges and incorporates the preceding paragraphs.

**ANSWER**:

Defendants incorporate by reference its answers to paragraphs 1-86 as if fully set forth herein.

88. Defendant Brownstown Charter Township acted with deliberate indifference in failing to adequately train, supervise, and discipline its police officers.

**ANSWER**:

The allegations contained in this paragraph are denied in the form and manner alleged. Defendants state that they fulfilled all duties owed.

89. A municipality can be liable based on a single incident where the need for more or different training is so obvious, and the inadequacy so likely to result in a constitutional violation, that policymakers can be said to have been deliberately indifferent. *City of Canton v. Harris*, 489 U.S. 378 (1989); *Harris v. City of Saginaw*, No. 20-cv-11781, 2022 U.S. Dist. LEXIS 90623 (E.D. Mich. May 20, 2022). A single instance of a policymaker's deliberate indifference is sufficient. *Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004).

**ANSWER**:

To the extent the allegations contained this paragraph constitute legal conclusions solely, the same are within the purview of this Court. Accordingly, no answer is needed and none is given. Otherwise, the allegations are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

90. The Township's failure to have any policy governing court-ordered fingerprinting for non-custodial individuals was an obvious omission likely to result in a constitutional violation. The Township's retroactive creation of such a policy on June 24, 2026—the same day this lawsuit was filed—is an admission of this prior deliberate indifference.

**ANSWER**:

The allegations contained in this paragraph are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

91. The Township's unconstitutional customs are further evidenced by its officers' violations of existing Use of Force and Arrest policies, the fabrication of official reports, the alteration and destruction of evidence, and the supervisors' ratification of the misconduct.

**ANSWER**:

The allegations contained in this paragraph are denied in the form and manner alleged. Defendants further state that they fulfilled all duties owed.

92. This unconstitutional custom or policy was the moving force behind the violation of Plaintiff's constitutional rights and directly caused the injuries she suffered.

**ANSWER**:

As to the allegations of unconstitutional custom or policy, the same are denied in the form and manner alleged. As to the remaining allegations, Defendants neither admit nor deny the same for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

**COUNT VII: SUPERVISORY LIABILITY**
**(42 U.S.C. § 1983)**
**(Against Defendants Sergeant Jonathan Smith, Lieutenant Michael Topjian, and Deputy Chief Robert Lafayette)**

93. Plaintiff realleges and incorporates the preceding paragraphs.

**ANSWER**:

Defendants incorporate by reference its answers to paragraphs 1-92 as if fully set forth herein.

94. A supervisor can be held liable for the unconstitutional conduct of subordinates based on a showing of deliberate indifference or acquiescence in that conduct. *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). This can be shown if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct. *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576 (1st Cir. 1994).

**ANSWER**:

To the extent the allegations contained this paragraph constitute legal conclusions solely, the same are within the purview of this Court. Accordingly, no answer is needed and none is given. Otherwise, the allegations are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

95. Defendant Lieutenant Michael Topjian was inside the police department at the time of the incident and arrived at the scene only after the assault. In his supervisory capacity, he was aware of the unconstitutional conduct and not only failed to take corrective action, but actively participated in the cover-up by manufacturing a false charge, thereby implicitly authorizing and acquiescing in the misconduct.

**ANSWER**:

The allegations in this paragraph are denied in the form and manner alleged. Defendants further state that they fulfilled all duties owed.

96. Defendant Sergeant Jonathan Smith was not present at the scene; however, in his supervisory capacity, Defendant Sergeant Jonathan Smith reviewed the body camera footage, approved the use of force, and failed to rectify the unconstitutional conduct, thereby ratifying it.

**ANSWER**:

As to the allegations of Defendant's failure to rectify the unconstitutional conduct, the same are denied in the form and manner alleged. As to the remaining allegations contained in this paragraph, Defendants neither admitted nor denied the same for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

97. Defendant Deputy Chief Robert Lafayette, as a final policymaker, was deliberately indifferent to the need for better training, supervision, and discipline concerning the use of force, probable cause for arrest, and evidence integrity, which directly caused the violation of Plaintiff's rights.

**ANSWER**:

As to the allegations of Defendant's indifference, the same are denied in the form and manner alleged. As to the remaining allegations contained in this paragraph, Defendants neither admitted nor denied the same for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

98. The failure of these supervisors to properly train and supervise their subordinates, and their acquiescence in the unconstitutional conduct, was a direct and proximate cause of Plaintiff's injuries.

**ANSWER**:

As to the allegations of Defendants' alleged failure, the same are denied in the form and manner alleged. As to the remaining allegations contained in this paragraph, Defendants neither admitted nor denied the same for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

**COUNT VIII: RETALIATORY PROSECUTION**
**(42 U.S.C. § 1983 – Violation of the First and Fourth Amendments)**
**(Against Defendants Officer Gage McParland and Lieutenant Michael Topjian)**

99. Plaintiff realleges and incorporates the preceding paragraphs.

**ANSWER**:

Defendants incorporate by reference its answers to paragraphs 1-98 as if fully set forth herein.

100. A plaintiff in a retaliatory prosecution action must plead and show the absence of probable cause for the underlying criminal charge. *Hartman v. Moore*, 547 U.S. 250 (2006); *Blackwell v. Nocerini*, No. 22-1926, 2024 U.S. App. LEXIS 233 (6th Cir. Jan. 4, 2024). A plaintiff may bring a Fourth Amendment malicious prosecution claim where an invalid charge causes the detention to continue, even if other charges were contemplated. *Chiaverini v. City of Napoleon*, 144 S. Ct. 1656

(2024). Falsifying facts to establish probable cause is patently unconstitutional. *Taylor v. City of Detroit*, 368 F. Supp. 2d 676 (E.D. Mich. 2005).

**ANSWER**:

> To the extent the allegations contained this paragraph constitute legal conclusions solely, the same are within the purview of this Court. Accordingly, no answer is needed and none is given. Otherwise, the allegations are neither admitted nor denied for lack of information sufficient to form a belief, and Plaintiff is left to her proofs.

101. Defendant Officer Gage McParland and Defendant Lieutenant Michael Topjian caused Plaintiff to be charged with Hindering and Obstructing a Police Officer not because there was probable cause, but in retaliation for Plaintiff's protected First Amendment conduct of questioning Defendant Officer Gage McParland's unlawful orders and to justify the unconstitutional use of force against her. *See Gericke v. Begin*, 753 F.3d 1 (1st Cir. 2014); *Mitchell v. County of Contra Costa*, No. 20-cv-05047, 2022 U.S. Dist. LEXIS 206105 (N.D. Cal. Nov. 14, 2022).

**ANSWER**:

> To the extent the allegations contained this paragraph constitute legal conclusions solely, the same are within the purview of this Court. Accordingly, no answer is needed and none is given. Otherwise, the allegations are denied in the form and manner alleged, and Defendants state that they fulfilled all duties owed.

102. The body camera transcript of the conversation between Defendant Officer Gage McParland and Defendant Lieutenant Michael Topjian provides direct

evidence of this retaliatory animus. After the assault, Defendant Lieutenant Michael Topjian immediately decided to manufacture a "cover charge," stating, "So we'll do a H&O on our end, do a use of force report on it."

**ANSWER**:

The allegations contained in this paragraph are denied in the form and manner alleged. Defendants further state that they fulfilled all duties owed. In further answer, Defendants state that the transcript speaks for itself.

103. The decision to charge was made after the fact to justify the violence, not before the violence in response to any criminal conduct by Plaintiff.

**ANSWER**:

The allegations contained in this paragraph are denied in the form and manner alleged. Defendants further state that they fulfilled all duties owed.

104. Defendant Lieutenant Michael Topjian then confirmed the retaliatory and bad-faith nature of the charge by stating his intent to deliberately conceal it from Plaintiff, saying, "I won't tell her about the H&O."

**ANSWER**:

The allegations contained in this paragraph are denied in the form and manner alleged. Defendants further state that they fulfilled all duties owed.

105. Defendant Lieutenant Michael Topjian also admitted that the correct, lawful procedure was to release Plaintiff, stating, "if she doesn't want to comply

now, then just we're not going to hold her on an H&O. Okay, get her out," thereby conceding that detaining and charging her lacked a lawful basis.

**ANSWER**:

The allegations contained in this paragraph are denied in the form and manner alleged. Defendants further state that they fulfilled all duties owed.

106. As a direct and proximate result of this retaliatory prosecution, Plaintiff has been forced to defend against baseless criminal charges, has suffered emotional distress, and has incurred expenses related to her defense.

**ANSWER**:

As to the allegations of retaliatory prosecution, the same are denied in the form and manner alleged. As to the remaining allegations in this paragraph, Defendants neither admit nor deny the same for lack of information sufficient to form a belief and Plaintiff is left to her proofs.

WHEREFORE, Defendants, Brownstown Charter Twp., Office Gage McParland, Officer Agustin Aguilar, Officer Blaise DuBois, Sergeant Jonathan Smith, Lieutenant Michael Topjian, and Deputy Chief Robert Lafayette, respectfully request that this Honorable Court dismiss the Plaintiff's Complaint in its entirety with prejudice, and award Defendants costs and attorneys' fees incurred as a result of having to defend themselves against this wrongful litigation.

## DEFENDANTS' AFFIRMATIVE DEFENSES

Defendants, Brownstown Charter Twp., Office Gage McParland, Officer Agustin Aguilar, Officer Blaise DuBois, Sergeant Jonathan Smith, Lieutenant Michael Topjian, and Deputy Chief Robert Lafayette, by their attorney, John A. Mullett of the Law Offices of Carol K. Metz, for their Affirmative Defenses, states as follows:

1. Plaintiff's claims for underinsured and uninsured benefits are unripe where Plaintiff acknowledges that the underlying primary policy limit has not been surrendered nor exhausted.

2. Plaintiff's allegations throughout the Amended Complaint comprise improper and inaccurate characterizations where the videotape speaks for itself and is factual and should not be stated in argumentative ways.

3. Plaintiff's claimed medical expenses were not reasonable and necessary for reasons that may be discovered more thoroughly through the course of litigation.

4. Plaintiff's claimed injuries and/or damages were not attributable to the subject incident for reasons that may be discovered more thoroughly through the course of litigation.

5. Plaintiff's cause of action is barred in total, or at least in part, by Plaintiff's failure to mitigate damages for reasons that may be discovered more thoroughly through the course of litigation.

6. These Defendants are entitled to a set off pursuant to the collateral source rule for reasons that may be discovered more thoroughly through the course of litigation.

7. Plaintiff did not suffer a threshold injury under the Michigan No-Fault Act and her lawsuit is, therefore, barred in its entirety.

8. These Defendants will show upon trial of the above entitled action that Plaintiff's damages are barred in total, or at least in part, due to the fact that they are attributable to injuries and/or conditions occurring either before or after the subject motor-vehicle accident for reasons that may be discovered more thoroughly through the course of litigation.

9. Plaintiff's cause of action is barred by the applicable statute(s) of limitation.

10. Plaintiff was comparatively negligent, more than 50% at fault, or fully at fault for the underlying accident and any award must be reduced accordingly.

11. These Defendants did not form or act with the requisite intent contemplated by the statutes and bases for liability asserted.

12. Plaintiff has not suffered a compensable injury within the meaning of the No-Fault Act and under current case law.

13. Plaintiff's injuries are attributable to non-parties, a non-party or an alternative party and any finding of liability as against these Defendants must be reduced accordingly.

14. Plaintiff has not exhausted the limits of the primary policy pursued and Defendants cannot be liable for any damages until that has occurred.

15. Plaintiff has filed this action in an improper jurisdiction and venue.

16. These Defendants reserve the right to raise additional Affirmative Defenses as they become known to these Defendants through the course of discovery.

LAW OFFICES OF CAROL K. METZ
Attorneys for Defendants

Dated: November 19, 2026

By: ______________________________
John A. Mullett (P49880)

625 Kenmoor Ave., SE, Suite 212
Grand Rapids, MI 49546
(616) 942-4227
jmullett@travelers.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the parties of record.

By: ______________________________
John A. Mullett